# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

## BECKLEY DIVISION

| | |
|---|---|
| **SHARON K. HICKS,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | )   **CIVIL ACTION NO. 5:05-0621** |
| | ) |
| **JO ANNE B. BARNHART,** | ) |
| **Commissioner of Social Security,** | ) |
| | ) |
| **Defendant.** | ) |

## **PROPOSED FINDINGS AND RECOMMENDATION**

This is an action seeking review of the final decision of the Commissioner of Social Security denying the Claimant's application for Supplemental Security Income (SSI) under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f. This case was referred to the undersigned United States Magistrate Judge by Standing Order to consider the pleadings and evidence, and to submit Proposed Findings of Fact and Recommendation for disposition, all pursuant to 28 U.S.C. § 636(b)(1)(B). (Doc. No. 3.) Presently pending before the Court is the Plaintiff's "Brief in Support of Complaint" (Doc. No. 9.), Defendant's Motion for Judgment on the Pleadings (Doc. No. 10.), and the Plaintiff's Reply. (Doc. No. 11.)

The Plaintiff, Sharon K. Hicks (hereinafter referred to as "Claimant"), filed an application for SSI on November 18, 2003 (protective filing date), alleging disability as of September 1, 2002, due to chronic obstructive pulmonary disease (COPD), anxiety/depression, panic disorder, severe back pain, and hypothyroidism.[1] (Tr. at 16, 265-69, 275.) The claim was denied initially and upon

---

[1] Claimant filed a prior application for SSI on December 22, 2000 (Tr. at 58-61.), which claim was denied initially on July 9, 2001 (Tr. at 38-40.), and on reconsideration on October 22, 2001. (Tr. at 45-47.) After an administrative hearing, ALJ Richard J. Maddigan denied her claim for

reconsideration. (Tr. at 232-34, 238-40.) On August 31, 2004, Claimant requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. at 241.) A hearing was held on February 22, 2005, before the Honorable John T. Yeary. (Tr. at 620-60.) On March 21, 2005, the ALJ issued a decision denying Claimant's claim for benefits. (Tr. at 15-23.) The ALJ's decision became the final decision of the Commissioner on June 1, 2005, when the Appeals Council denied Claimant's request for review. (Tr. at 5-9.) On August 2, 2005, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g). (Doc. No. 1.)

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(I), a claimant for disability benefits has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 1382c(a)(3)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. § 404.1520 (2004). If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. § 404.1520(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. § 404.1520(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. § 404.1520(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id.

---

benefits on August 30, 2002. (Tr. at 56, 205-14.) The Appeals Council denied Claimant's request for review on June 11, 2003. (Tr. at 219-21.) Claimant filed a second application for SSI on October 2, 2002. (Tr. at 249-62.) The claim was denied initially on March 19, 2003, and upon reconsideration on September 3, 2003. (Tr. at 222-24, 229-31.)

§ 404.1520(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. 20 C.F.R. § 404.1520(e). By satisfying inquiry four, the claimant establishes a prima facie case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. § 404.1520(f) (2004). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because she had not engaged in substantial gainful activity since the alleged onset date. (Tr. at 16-17.) Under the second inquiry, the ALJ found that Claimant suffered from COPD, back pain, an affective disorder, and an anxiety disorder which he deemed severe impairments. (Tr. at 18.) At the third inquiry, the ALJ concluded that Claimant's impairment did not meet or medically equal the level of severity of any listing in Appendix 1. (Tr. at 18-19.) The ALJ then found that Claimant had a residual functional capacity to perform sedentary exertional work, limited as follows:

> She can never climb ladders, ropes, or scaffolds. She can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. She should avoid all exposure to extreme cold, extreme heat, humidity/wetness, and fumes/industrial pollutants. She should avoid concentrated exposure to vibration and hazards. She experiences mild to moderate pain but could be attentive to and carry out the assigned work tasks. She is limited to work[] involving limited public contact with simple, repetitive tasks.

(Tr. at 20.) As a result, Claimant could not return to her past relevant work. (Tr. at 21.) On the basis of testimony of a Vocational Expert ("VE") taken at the administrative hearing, the ALJ nonetheless concluded that Claimant could perform jobs such as a finisher, a knitting topper, and an assembly worker, at the sedentary exertional level, all of which existed in significant numbers in the regional and national economies. (Tr. at 22.) On this basis, benefits were denied. (Tr. at 22-23.)

Scope of Review

The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals that the decision of the Commissioner is not supported by substantial evidence.

Claimant's Background

Claimant was born on May 19, 1956, and was 48 years old at the time of the administrative hearing. (Tr. at 16, 266, 625.) Claimant had a ninth grade education and a Generalized Equivalency

Diploma. (Tr. at 16, 281, 627.) In the past, she worked as a companion, a housekeeper, and a laundry worker. (Tr. at 16, 276, 287-89, 650-52.)

The Medical Record

The Court has considered all evidence of record, including the medical evidence and will discuss it below as it relates to Claimant's arguments.

Claimant's Challenges to the Commissioner's Decision

Claimant argues that the ALJ failed to consider her diagnosis of obesity, and therefore, the ALJ's finding that she could perform a significant range of sedentary work is not supported by substantial evidence of record. (Pl.'s Br. at 4-8) She argues that the ALJ did not consider her functional limitations of fatigue, namely her tiredness, inability to sit or stand for more than twenty minutes, and her need to lie down for one hour each day. (Pl.'s Br. at 6.) Consequently, Claimant further argues that the ALJ's credibility analysis is flawed because (1) the ALJ failed to state the reasons he discredited her testimony concerning her inability to sit or stand in excess of twenty minutes and her need to lie down, and (2) the ALJ did not make the threshold finding that her obesity was an impairment. (Pl.'s Br. at 6.) The Commissioner first asserts that the ALJ did not ignore Claimant's diagnosis of obesity, but rather he noted her abnormal weight gain as a consequence of her hypothyroidism. (Def.'s Br. at 6.) Second, the Commissioner argues that the ALJ gave Claimant the benefit of all doubt in limiting her to the minimal demands of sedentary work despite the opinions of the state agency physicians who considered her obesity but found that she could perform medium exertional work. (Def.'s Br. at 7.) Third, the Commissioner argues that Claimant's physicians did not opine that her obesity limited her from performing the demands of sedentary work. (Def.'s Br. at 7.) Finally, the Commissioner argues that Claimant's allegations that

she must not sit for more than twenty minutes and must lie down for one hour each day are not supported by the evidence of record. (Def.'s Br. at 8.) Accordingly, the Commissioner argues that the ALJ's decision is supported by substantial evidence and that Claimant's arguments are without merit.

"Obesity is a risk factor that increases an individual's chances of developing impairments in most body systems. It commonly leads to, and often complicates, chronic diseases of the cardiovascular, respiratory, and musculoskeletal body systems." Social Security Ruling ("SSR") 02-1p, 2000 WL 628049, *2. This Ruling provides guidance concerning the evaluation of obesity in disability claims and discusses the consideration of obesity at different levels in the sequential analysis. Pursuant to SSR 02-1p, an ALJ must consider obesity in determining whether a claimant has a medically determinable impairment that is severe (step two), whether the impairment meets or equals the requirements of a Listing (step three), and whether the impairment prevents the claimant from performing past relevant work (step four) and other work that exists in significant numbers in the national economy (step five). SSR 02-1p at *3. The Regulations specifically require the ALJ to consider the effects of obesity combined with the claimant's other impairments at steps three and four. Sections 1.00(Q), 3.00(I), and 4.00(F) of the Listing of Impairments states as follows:

> Effects of obesity. Obesity is a medically determinable impairment that is often associated with disturbances of the musculoskeletal [, respiratory, or cardiovascular] system, and disturbance of this system can be a major cause of disability in individuals with obesity. The combined effects of obesity with musculoskeletal [, respiratory, or cardiovascular] impairments can be greater than the effects of each of the impairments considered separately. Therefore, when determining whether an individual with obesity has a listing-level impairment or combination of impairments, and when assessing a claim at other steps of the sequential evaluation process, including when assessing an individual's residual functional capacity, adjudicators must consider any additional and cumulative effects of obesity.

20 C.F.R. Pt. 404 Subpt. P, App. 1 (2004).

Claimant essentially argues that the ALJ failed to consider her obesity at steps two through five of the sequential analysis. She avers that the evidence demonstrated that she suffered from morbid obesity which caused fatigue, an inability to sit or stand for more than twenty minutes, and a need to lie down for one hour each day. The ALJ found that Claimant's COPD, back pain, affective disorder, and anxiety disorder were severe impairments. (Tr. at 18.) The ALJ referenced Claimant's diagnosed obesity, noting her complaints of fatigue, weight gain, feelings of tiredness, and muscle weakness. (Tr. at 17.) However, the ALJ considered her obesity as only a symptom of her non-severe hypothyroidism impairment rather than as a medically determinable impairment.

In Rutherford v. Barnhart, 399 F.3d 546, 552-53 (3d Cir. 2005), the claimant argued that the case should be remanded because the ALJ failed to consider her obesity. The United States Court of Appeals for the Third Circuit affirmed and refused to remand, noting that the claimant did not mention obesity as a condition that contributed to her inability to work and that remand would not affect the outcome of the case. See id. at 553. The Court concluded that the ALJ was alerted by the record that obesity could be a factor, but that the claimant essentially failed to pursue this avenue by failing to indicate how it limited her abilities. Id. The Court quoted and followed the reasoning of a Seventh Circuit decision, Skarbek v. Barnhart, 390 F.3d 500 (7th Cir. 2004) (per curiam):

> An ALJ is required to consider impairments a claimant says he has, or about which the ALJ receives evidence. Although Skarbek did not specifically claim obesity as an impairment (either in his disability application or at his hearing), the references to his weight in his medical records were likely sufficient to alert the ALJ to the impairment. Despite this, any remand for explicit consideration of Skarbek's obesity would not affect the outcome of this case. Notably, Skarbek does not specify how his obesity further impaired his ability to work, but speculates merely that his weight makes it more difficult to stand and walk. Additionally, the ALJ adopted the limitations suggested by the specialists and reviewing doctors, who were aware of Skarbek's obesity. Thus, although the ALJ did not explicitly consider Skarbek's obesity, it was factored indirectly into the ALJ's decision as part of the doctors' opinions.

Rutherford, 399 F.3d at 546 (quoting Skarbek, 390 F.3d at 504).

Similar to the facts of Rutherford and Skarbek, in the instant case, Claimant did not specifically claim obesity as an impairment. (Tr. at 25, 61-63, 86.) Nevertheless, SSR 02-1p requires an ALJ to consider obesity and its effects together with the underlying impairments at steps two through five of the sequential analysis, even if the claimant does not allege obesity as an impairment. See SSR 02-1p at * 3; see also Clifford v. Apfel, 227 F.3d 863, 873 (7th Cir. 2000) (finding that although the claimant did not allege obesity in her application for disability benefits, "the evidence should have alerted the ALJ that [the claimant] had another relevant impairment that could contribute to the cumulative effect of her other impairments."). If the obesity is apparent from the medical evidence of record, then the ALJ is presumed to have received notice of the impairment. Id. Although there is no specific level of weight, body mass index ("BMI"), or descriptive term for obesity which equates obesity with a severe impairment, the National Institute of Health has established Clinical Guidelines which recognize three levels of obesity: "Level I includes BMIs of 30.0-34.9. Level II includes BMIs of 35.0-39.9. Level III, termed 'extreme' obesity and representing the greatest risk for developing obesity-related impairments, includes BMIs greater than or equal to 40." SSR 02-1p at *2. Adults with a BMI of 25-29.9 are considered "overweight," and those adults with a BMI of 30.0 or greater are described as "obesity." Id.

The medical record reveals that on February 20, 2004, Rogelio T. Lim, M.D., a state agency physician diagnosed Claimant's obesity, secondary to her COPD and a sprain of the lumbar spine. (Tr. at 471.) Dr. Lim noted that Claimant weighed 188 pounds and had a BMI of 33. The progress notes of Claimant's treating physician, S.K. Shammaa, M.D., indicate that Claimant was "morbidly obese" when her weight was at 168 pounds. (Tr. at 519.) On June 13, 2003, Ashraf Mena, M.D.,

8

noted Claimant weighed 195 pounds and diagnosed obesity. (Tr. at 590, 600.) On February 18, 2004, Claimant's weight had escalated to 202.5 pounds. (Tr. at 571.) On February 5, 2005, one month prior to the ALJ's decision, Dr. Shammaa recorded Claimant's weight as 214 pounds. (Tr. at 614.) Thus, prior to the ALJ's decision, Claimant's BMI ranged between Level II and Level III obesity. Accordingly, the undersigned finds that there were sufficient references to Claimant's weight and height in the medical records to have placed the ALJ on notice of Claimant's obesity impairment and that the ALJ erred in not considering Claimant's obesity as a medical impairment at step two of the sequential analysis. As Claimant argues, the ALJ's failure to consider her obesity as an impairment necessarily implies that the ALJ also failed to consider her impairments in combination.[2] See Cook v. Heckler, 783 F.2d 1168, 1174 (4th Cir. 1986).

Consistent with the decisions in Rutherford and Skarbek, the Commissioner argues that the ALJ indirectly considered Claimant's stated limitations resulting from her obesity. (Def.'s Br. at 7.)

---

[2] The Social Security Regulations provide that:

> In determining whether your physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under the law, we will consider the combined effect of all of your impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity.

20 C.F.R. §§ 404.1523, 416.923 (2004); *see also* SSR 85-28. Social Security Ruling 96-8p requires an ALJ to consider the limitations of all impairments, both severe and non-severe impairments. SSR 96-8p, 1996 WL 374184, *5. Where there is a combination of impairments, the issue "is not only the existence of the problems, but also the degree of their severity, and whether, together, they impaired the claimant's ability to engage in substantial gainful activity." *Oppenheim v. Finch*, 495 F.2d 396, 398 (4th Cir. 1974). The ailments should not be fractionalized and considered in isolation, but considered in combination to determine the impact on the ability of the claimant to engage in substantial gainful activity. Id. The cumulative or synergistic effect that the various impairments have on claimant's ability to work must be analyzed. *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983.)

The Commissioner asserts that the ALJ limited Claimant's residual functional capacity to the minimal demands of sedentary work despite the opinions of state agency physicians who expressly considered her obesity and determined that she could perform the demands of light work. (Def.'s Br. at 7.) The Commissioner further argues that although the medical evidence demonstrates that Claimant was obese, Claimant has not produced any medical opinions which limit her ability to function as a result of her obesity. (Def.'s Br. at 7.) The undersigned finds the Commissioner's arguments persuasive, but not dispositive. Although the ALJ reduced Claimant's residual functional capacity to performing work at the sedentary exertional level, the ALJ did not indicate that the reduction was based on complaints arising from her obesity. Rather, the opinion indicates that the ALJ considered Claimant's activities of daily living and her subjective complaints of back pain and reduced her RFC accordingly. (Tr. at 19-20.) There is no discussion in the ALJ's credibility analysis as to Claimant's alleged inability to sit or stand more than twenty minutes and as to her fatigue. "[T]he claimant's subjective complaints [of pain] must be considered by the Secretary, and these complaints may not be rejected merely because the severity of pain cannot be proved by objective medical evidence." Mickles v. Shalala, 29 F.3d 918, 919 (4th Cir. 1994). Objective medical evidence of pain should be gathered and considered, but the absence of such evidence is not determinative. Hyatt v. Sullivan, 899 F.2d 329, 337 (4th Cir. 1990). A claimant's symptoms, including pain, are considered to diminish his capacity to work to the extent that alleged functional limitations are reasonably consistent with objective medical and other evidence. 20 C.F.R. § 416.929(c)(4) (2003). Despite Claimant's stated daily activities of sitting, reading, and watching television, there is no indication in the record how long she sits or whether she read and watched television while sitting or whether she arose or sat down every twenty minutes. The ALJ however,

failed to explain his evaluation of this evidence in connection with Claimant's alleged limitations from her obesity. When an ALJ fails to explain his decision, it is "simply impossible to tell whether there was substantial evidence to support the determination." Cook v. Heckler, 783 F.2d at 1173. The ALJ must accompany his decision with sufficient explanation to allow a reviewing court to determine whether the Commissioner's decision is supported by substantial evidence. "[T]he [Commissioner] is required by both the Social Security Act, 42 U.S.C. § 405(b), and the Administrative Procedure Act, 5 U.S.C. § 557(c), to include in the text of [his] decision a statement of the reasons for that decision." Cook v. Heckler, 783 F.2d at 1172. The ALJ's "decisions should refer specifically to the evidence informing the ALJ's conclusion. This duty of explanation is always an important aspect of the administrative charge . . . ." Hammond v. Heckler, 765 F.2d 424, 426 (4th Cir. 1985). The Court will not make any assumptions about the severity or functional effects of Claimant's obesity when the ALJ did not consider the impairment. Based on the foregoing, the undersigned finds that the ALJ's failure to consider Claimant's obesity as an impairment, together with his failure to consider Claimant's alleged limitations from her obesity constitutes reversible error. Accordingly, the ALJ's decision is not supported by substantial evidence.

For the reasons set forth above, it is hereby respectfully **RECOMMENDED** that the District Court **GRANT** Plaintiff's Motion for Judgment on the Pleadings, **DENY** the Defendant's Motion for Judgment on the Pleadings, **VACATE** the final decision of the Commissioner, **REMAND** this matter for further proceedings consistent with this Proposed Findings and Recommendation pursuant to the fourth sentence of 42 U.S.C. § 405(g), and **DISMISS** this matter from the Court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Thomas E. Johnston, United States District Judge.

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(e) and 72(b), Federal Rules of Civil Procedure, the parties shall have ten days (filing of objections) and then three days (mailing/service) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of <u>de novo</u> review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. <u>Snyder v. Ridenour</u>, 889 F.2d 1363, 1366 (4th Cir. 1989); <u>Thomas v. Arn</u>, 474 U.S. 140, 155 (1985); <u>Wright v. Collins</u>, 766 F.2d 841, 846 (4th Cir. 1985); <u>United States v. Schronce</u>, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, Judge Johnston, and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to mail a copy of the same to counsel of record.

Date: July 31, 2006.

*R. Clarke VanDervort*
R. Clarke VanDervort
United States Magistrate Judge